## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **DAVID WEBB, and  MELISSA WEBB,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | **Case No. 12-CV-2001 JAR/KGS** |
| | ) | |
| **PREMIERE CREDIT OF NORTH** | ) | |
| **AMERICA, LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## MEMORANDUM AND ORDER

Plaintiffs David and Melissa Webb bring this action against Defendant Premier Credit of

North America, LLC ("Premiere Credit"), alleging violations of the Fair Debt Collection

Practices Act ("FDCPA").[1]  This case comes before the Court on Defendant's Motion for

Summary Judgment (Doc. 40), which includes a request for attorneys' fees and costs.  The

motion is fully briefed and the Court is prepared to rule.  For the reasons stated below, the Court

grants summary judgment but denies Defendant's request for attorneys' fees and costs.

### I.     Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no

genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law."[2]

In applying this standard, the court views the evidence and all reasonable inferences therefrom in

the light most favorable to the nonmoving party.[3]  "There is no genuine issue of material fact

unless the evidence, construed in the light most favorable to the nonmoving party, is such that a

---

[1]15 U.S.C. §§ 1692–1692p.

[2]Fed. R. Civ. P. 56(a).

[3]*City of Harriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

reasonable jury could return a verdict for the nonmoving party."[4]  A fact is "material" if, under

the applicable substantive law, it is "essential to the proper disposition of the claim."[5]  An issue

of fact is "genuine" if "'the evidence is such that a reasonable jury could return a verdict for the

non-moving party.'"[6]

      The moving party initially must show the absence of a genuine issue of material fact and

entitlement to judgment as a matter of law.[7]  In attempting to meet this standard, a movant that

does not bear the ultimate burden of persuasion at trial need not negate the other party's claim;

rather, the movant need simply point out a lack of evidence for the other party on an essential

element of that party's claim.[8]

      Once the movant has met this initial burden, the burden shifts to the nonmoving party to

show that there is a genuine issue for trial.[9]  The nonmoving party may not simply rest upon its

pleadings to satisfy its burden.[10]  Rather, the nonmoving party must "set forth specific facts that

would be admissible in evidence in the event of trial from which a rational trier of fact could find

---

[4]*Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

[5]*Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc*., 144 F.3d 664, 670 (10th Cir. 1998)).

[6]*Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)).

[7]*Spaulding v. United Trasp. Union*, 279 F.3d 901, 904 (10th Cir. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

[8]*Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000) (citing *Adler*, 144 F.3d at 671); *see also Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010).

[9]*Anderson*, 477 U.S. at 256; *Celotex*, 477 U.S. at 324; *Spaulding*, 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986)).

[10]*Anderson*, 477 U.S. at 256; *accord Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir. 2001).

for the nonmovant."[11] To accomplish this, the facts "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein."[12]  Rule 56(c)(4) provides that opposing affidavits must be made on personal knowledge and shall set forth such facts as would be admissible in evidence.[13]  The non-moving party cannot avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation.[14]

Finally, summary judgment is not a "disfavored procedural shortcut"; on the contrary, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[15]  In responding to a motion for summary judgment, "a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial."[16]

## II.    Uncontroverted Facts

The following facts are either uncontroverted, stipulated to, or viewed in the light most favorable to Plaintiff.  Prior to this lawsuit, Plaintiff Melissa Webb incurred a debt for a student loan to ITT Tech.  Upon default of the debt with the creditor, the debt was transferred to Defendant, Premiere Credit, for collection purposes.  Defendant initiated 150 telephone calls

---

[11]*Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197–98 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 671); *see Kannady*, 590 F.3d at 1169.

[12]*Adams*, 233 F.3d at 1246.

[13]Fed. R. Civ. P. 56(c)(4).

[14]*Id.*; *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006) (citation omitted).

[15]*Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

[16]*Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988).

between June 1, 2011, and January 4, 2012, to Melissa Webb to discuss her debt.  Calls often took place on continuous days with as many as six calls per day.  Plaintiffs received phone calls between 8:00 a.m. and 9:00 p.m. on all days except Sunday.  Plaintiff David Webb did not receive any phone calls from Defendant and never spoke with Defendant.

Plaintiffs maintained a call log for some of the calls they received that included the date of the calls, the time of the calls, and the telephone number displayed on the caller ID.  The call log lists calls from different phone numbers and creditors.  Plaintiffs did not record all calls from Defendant on their call log.  Plaintiffs neither called Premiere Credit nor communicated in writing to Premiere Credit.  Plaintiffs never paid Premiere Credit.  Premiere Credit indicated on its own call logs that some calls were withdrawn, but those logs do not distinguish between withdrawn calls that caused Plaintiffs' telephone to ring and those that did not.

Plaintiffs claim that they received several phone calls per day over a number of months from Defendant, causing them emotional distress, stress, and anxiety.  Neither Plaintiff received medical treatment, psychological treatment, or medication for their alleged damages.  Plaintiffs testified that they received telephone calls from other collection agencies in addition to Premiere Credit, and that these other calls could have contributed to their emotional distress.

**III.    Discussion**

Plaintiffs contend that Defendant violated the FDCPA, specifically 15 U.S.C. §1692d(5). Plaintiffs further claim that, as a result of Defendant's FDCPA violation, they are entitled to actual damages under 15 U.S.C. § 1692k(a)(1).  Defendant argues that there is no evidence to establish that it intended to harass, abuse, or annoy Plaintiffs in seeking to collect Melissa

Webb's debt, and that there is no evidence of emotional distress sufficient to establish that actual damages are warranted.  Defendant also seeks attorneys' fees and costs under the statute.

### A.      15 U.S.C. §  1692d(5)

15 U.S.C. § 1692d provides that "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."  Further, § 1692d(5) prohibits the debt collector from "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number."

Defendant claims that there is no evidence to show that Defendant harassed, abused, or annoyed Plaintiffs by making a high volume of phone calls in violation of the FDCPA. Defendant also argues that Plaintiffs fail to produce any evidence that Defendant engaged in other egregious conduct that would give rise to a finding of intent to annoy, abuse, or harass. Plaintiffs allege that a material issue of fact remains as to the number of times the Defendant caused the Plaintiffs' telephone to ring and whether it was done with intent to annoy, abuse or harass.

In deciding a motion for summary judgment, the Court considers the volume and pattern of the calls by the debt collector to the plaintiff.[17]  A high volume of calls, even daily calls, unaccompanied by other egregious conduct is insufficient to raise a triable issue of fact for the jury.[18]  Other egregious conduct may include calling after immediately hanging up, calling multiple times in a single day, calling places of employment, calling family or friends, calling at

---

[17]*Carman v. CBE Group, Inc.*, 782 F. Supp. 2d 1223, 1229–31 (D. Kan. 2011).

[18]*Id.*

odd hours, or calling after being asked to stop.[19]  For example, in *Tucker v. CBE Group, Inc.*, 57

calls were made by the debt collector to the plaintiff over an undetermined period of time,

including seven calls in one day.[20]  The Middle District of Florida found this to be insufficient to

constitute a triable issue of fact because the defendant never spoke to the plaintiff, was never

asked to stop calling, and never called back the same day after leaving a message.[21]  Similarly, in

*Saltzman v. I.C. Systems, Inc.*, [22] the debt collector unsuccessfully called the plaintiff 20 to 50

times in one month.[23]  The court granted summary judgment for the defendant, holding that

difficulty reaching the plaintiff is not the same as intent to harass.[24]

      In this case, the Court finds there is no evidence of an unacceptable pattern of calls.  The

record lacks any indicia of the type of egregious conduct that would raise an issue of triable fact

when coupled with a high call volume.  Plaintiffs argue that a genuine issue of fact remains as to

the number of times Defendant caused the telephone to ring.  They point to evidence that

telephone calls were initiated up to six times per day on consecutive days in November and

December of 2011, as evidence of an intent to annoy, abuse, or harass.  However, as stated in

*Carman*, there must be other evidence of egregious conduct to evince an intent to annoy, abuse,

or harass.[25]  Here, even though the number of initiated calls appears high between November and

---

[19]*Id.*

[20]710 F. Supp. 2d 1301 (M.D. Fla. 2010).

[21]*Id.*

[22]No. 09-10096, 2009 WL 3190359, at * 6–7 (E.D. Mich. Sept. 30, 2009).

[23]*Id.*

[24]*Id.*

[25]782 F. Supp. 2d at 1232.

December, without the presence of any other egregious conduct, no genuine issue of fact remains

as to whether the conduct was done with the intent to annoy, abuse, or harass.  Viewing the

evidence in the light most favorable to Plaintiffs, Defendant initiated 150 telephone calls.  But

since a high volume of calls without other egregious conduct does not constitute a triable issue of

fact on intent under § 1692d(5), Plaintiff's focus on the volume of calls is unavailing.

     Plaintiffs also point to their testimony that Defendant's telephone calls caused them

stress and anxiety, but in *Carman*, this Court held "[Plaintiff's] opinion regarding whether the

calls were harassing is not evidence of [Defendant's] intent."[26] Without evidence of additional

egregious conduct, there is no genuine issue of material fact as to whether Defendant had the

intent to annoy, abuse, or harass.  It is uncontroverted that Defendant's intent in contacting

Plaintiffs was to discuss the debt owed.  Calls never took place on Sunday and did not occur

during unacceptable hours.  Plaintiffs allege that more than one voice mail message may have

been left for Melissa Webb, but there is no evidence that Defendant called back on the same day

that voice message was left.  For example, Defendant's call log shows that after Defendant "left

a message to call" on June 11, 2011, no other calls were placed that day.  There is no evidence

that Plaintiffs ever requested that Defendant stop calling, and Plaintiffs never disputed the debt at

issue.  There is no evidence of deliberate "hang up" calls by Defendant.  And, finally, there is no

evidence that Defendant called back after speaking with Plaintiffs or after Plaintiffs terminated a

call.

     Viewing the evidence in the light most favorable to the Plaintiffs, there is no genuine

dispute as to any material fact as to whether Defendant's phone calls to Plaintiffs demonstrate an

---

[26]*Id.*

intent to annoy, abuse or harass in violation of § 1692d(5). Therefore, summary judgment is granted on this claim.

Given the Court's finding that Defendant did not violate 15 U.S.C. § 1692d(5), it need not determine whether Plaintiffs suffered actual damages under 15 U.S.C. §1692k.[27]

### B.      Fees and Costs

Premiere Credit seeks an award of attorneys's fees and costs under Fed. R. Civ. P. 11, 28 U.S.C. § 1927, 15. U.S. § 1692k(a)(3), and Fed. R. Civ. P. 54(d)(1).  A party seeking Rule 11 sanctions must satisfy the procedural requirements of Rule 11(c)(2), commonly known as the "safe harbor" provision.  Rule 11 sets forth mandatory requirements that a moving party must meet before a court is permitted to order sanctions.[28]  The moving party must submit the motion for sanctions separate and apart from any other motion or request.[29]  The moving party must serve the motion on the opposing party.[30]  If, after twenty-one days, the opposing party does not withdraw the challenged paper, claim, defense, contention, allegation, or denial, the moving party may file its motion for sanctions with the court.[31]  Defendant did not separately file a motion for sanctions, and there is no evidence that Defendant served Plaintiffs with its motion

---

[27]Even if Defendant had violated 15 U.S.C. § 1692d(5), the Court would likely find that Plaintiffs suffered no actual damages. Here, Plaintiffs rely on their own testimony in an attempt to prove emotional distress damages and can only do so "provided that [the testimony] is sufficiently detailed and does not rely on conclusory statements." *Wantz v. Experian Info. Solutions*, 386 F.3d 829, 834 (7th Cir. 2004).  Plaintiff's testimony establishes that her preexisting conditions could have contributed to her stress and anxiety, and Melissa Webb opined that her headaches were not normal, even though her doctor told her that they were normal due to her pregnancy.  Plaintiffs were not prescribed any medication, nor did they receive any type of psychological or medical treatment.

[28]*See* Fed. R. Civ. P. 11(c)(2); *see also Aerotech, Inc. v. Estes*, 110 F.3d 1523, 1528–29 (10th Cir. 1997).

[29]*See* R. 11(c)(2).

[30]*Id.*

[31]*Id.*

for sanctions twenty-one days before filing it.[32]  Thus, Defendant is not entitled to Rule 11 sanctions.

Alternatively, section 1927 provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.[33]  As the Tenth Circuit summarized, sanctions are appropriate under § 1927 when an attorney is "cavalier or 'bent on misleading the court'"; when an attorney "intentionally acts without a plausible basis"; "when the entire course of the proceedings was unwarranted"; when "certain discovery is substantially unjustified and interposed for the improper purposes of harassment, unnecessary delay and to increase the costs of the litigation"; or "for conduct that, viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court."[34]  "Like Rule 11, the court must apply an objective standard and subjective bad faith is not a necessary showing for application of § 1927 sanctions."[35]  The court should only impose sanctions "'in instances evidencing a serious and standard disregard for the orderly process of justice'" and the court must be aware of the "need to ensure that the statute does not dampen attorneys' zealous representation of their clients' interests. . . ."[36]  Unlike Rule 11 sanctions, §

---

[32]*See McCormick v. City of Lawrence*, 218 F.R.D. 687, 691 (D. Kan. 2003); *McGregor v. Shane's Bail Bonds*, No. 10-2099-JWL, 2010 WL 3155635, at *18 (D. Kan. Aug. 9, 2010).

[33]28 U.S.C. § 1927.

[34]*Miera v. Dairyland Ins. Co.*, 143 F.3d 1337, 1342 (10th Cir. 1998) (citing *Braley v. Campbell*, 832 F.2d 1504, 1512 (10th Cir. 1987)).

[35]*Sheldon v. Khanal*, No. 10-2412-CM, 2010 WL 3825489, at *1 (D. Kan. Sept. 24, 2010).

[36]*Ford Audio Video Sys., Inc. v. AMX Corp., Inc.*, Nos. 97-6169, 97-6171, 1998 WL 658386, at *3 (10th Cir. Sept. 15, 1998) (quoting *Dreiling v. Peugeot Motors of Am., Inc.*, 768 F.2d 1159, 1165 (10th Cir. 1985) (internal quotations omitted)).

1927 sanctions are intended to compensate those who have been wronged as a result of abusive litigation practices.[37]  Because § 1927 "is penal in nature, the award should be made only in instances evidencing serious and standard disregard for the orderly process of justice."[38]

Defendant alleges that Plaintiffs had no factual basis for filing the suit because the call log that they relied on, which they failed to produce until after the close of discovery, does not show a high volume of calls. Defendant alleges that Plaintiffs are merely trying to coerce it into settling a frivolous lawsuit.  But the Court disagrees with Defendant's characterization of the call log.  As the Court previously explained, the call log and other evidence, when viewed in the light most favorable to Plaintiffs, does show a high volume of calls.  But the Court found no additional evidence in the record that Defendant caused Plaintiffs' phone to ring with intent to annoy, abuse, or harass.  The Court thus declines to find that the claim was frivolous or unreasonable.

Defendant points to four similar complaints claiming violations of the FDCPA by Plaintiffs, that demonstrates bad faith.  Defendant cites to another case filed by Plaintiffs in the United Stated District Court for the District of Kansas which was dismissed upon the court finding "the Complaint lack[ed] sufficient factual assertions either to put [Defendant] on notice of the claim or to allow it to respond."[39]  But another case's dismissal for failure to state a claim for relief is insufficient to establish that the claim in *this* case was filed in bad faith, without any reasonable basis, or with intent to harass.  Indeed, Defendant made this argument on its motion

---

[37]*Hamilton v. Boise Cascade Exp.*, 519 F.3d 1197, 1205 (10th Cir. 2008).

[38]*Miera*, 143 F.3d at 1342 (quotations and citations omitted).

[39]*Webb v. Convergence Outsourcing, Inc.*, No. 11-02606, 2012 WL 162394, at *1 (D. Kan. Jan. 19, 2012)

to dismiss for failure to state a claim.  In ruling on Defendant's motion to dismiss, this Court held that the claim made by the Plaintiffs was at least plausible and contained enough specific facts to distinguish the claim from being a mere "cookie-cutter" complaint.[40]

Defendant argues in its reply that Plaintiffs' counsel could have sent a letter to cease and desist letter instead of filing a "false" claim.  But the Court this issue because was raised for the first time in the reply.  And failure to send a cease and desist letter prior to filing suit is not sufficient to warrant sanctions under § 1927.[41]

Because Defendant has not established that Plaintiffs acted unreasonably or vexatiously, or that Plaintiffs' conduct was done with bad faith or an intent to harass, its motion for attorneys' fees and costs under § 1927 is denied.

Defendant claims that it is entitled to attorneys' fees and costs as a prevailing defendant under the FDCPA.[42]  This Court has previously held that §1692k(a)(3) is to be construed narrowly.[43]  For Defendant to be entitled to fees and costs, "[Defendant] must show that [Plaintiffs] knew the claim was meritless *and* that [they] pursued the claim for purposes of harassment."[44]  As already described, the Court finds that the claim was neither filed with bad faith nor with the intent to harass.  Plaintiffs' Complaint was plausible and contained enough specific facts to distinguish itself from a "cookie-cutter" complaint.  Plaintiffs based their claim

---

[40]Doc. 27 at 6.

[41]*Carman v. CBE Grp., Inc.*, 782 F. Supp. 2d 1223, 1237 (D. Kan. 2011).

[42]15 U.S.C. § 1692k(a)(3).  Defendant also claims to seek costs under Fed. R. Civ. P. 54(d)(1), which provides that costs should be awarded to the prevailing party, "[u]nless a federal statute, these rules, or a court order provides otherwise."  In this case, the FDCPA provision controls the award of costs, so Rule 54(d)(1) does not apply.

[43]*Carman*, 782 F. Supp. 2d at 1238.

[44]*Id.*

on the receipt of several phone calls a day over a number of months, and there is no evidence

that they intended to harass Defendant.  Because the claim was not conducted in bad faith and

was not done for the purpose of harassment, the Court denies Defendant's request for statutory

fees and costs under § 1692k(a)(3).

       **IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Motion for

Summary Judgment (Doc. 40) is **granted**.  Defendant's request for fees and costs is denied.

       **IT IS SO ORDERED**.

Dated: October 22, 2012

              S/ Julie A. Robinson

              JULIE A. ROBINSON

              UNITED STATES DISTRICT JUDGE